# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEVIN POULSEN,  )
  )
    Plaintiff,  )    Civil Action No. 17-cv-3531
        v.  )
  )
U.S. DEPARTMENT OF DEFENSE et al.,  )
  )
    Defendants.  )
  )

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section (RIDS), Records Management Division (RMD), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act (FOIA) policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 243 employees who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential,

1

Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and

Congressional directives. My responsibilities also include the review of FBI information for

classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (2010), and the

preparation of declarations in support of Exemption (b)(1) claims under the FOIA. I have been

designated by the Attorney General of the United States as an original classification authority,

and a declassification authority pursuant to Executive Order 13526 §§ 1.3 and 3.1. The

statements contained in this declaration are based upon my personal knowledge, upon

information provided to me in my official capacity, and upon conclusions and determinations

reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the

FBI's handling of Plaintiff's FOIA request that is the subject of this lawsuit.

(4)     This is the second declaration I have submitted in this case. My first declaration

was submitted on November 17, 2017, in support of Defendants' motion for summary judgment

and specifically to defend the FBI's Glomar response to Plaintiff's FOIA request. *See* ECF No.

31-1, Declaration of David M. Hardy. Due to recent events, the FBI's Glomar response has been

pierced in part due to the public disclosure of surveillance of Carter Page under the Foreign

Intelligence Surveillance Act (FISA). Accordingly, my second declaration is being submitted to

support Defendants' proposed schedule for processing the Carter Page FISA materials that have

been publicly acknowledged and that are responsive to Plaintiff's FOIA request at issue in this

lawsuit. That specifically includes the Foreign Intelligence Surveillance Court (FISC) orders of

October 21, 2016 and January 12, 2017, authorizing surveillance of Carter Page, and the FISA

applications associated with those two orders, which are the two groups of materials that fall within the search cut-off dates of Plaintiff's request (June 16, 2015 – April 4, 2017)

(5)    On February 2, 2018, House Republicans released a memorandum authored for Devin Nunes, Chairman of the House Permanent Select on Intelligence (HPSCI), by his staff that disclosed the existence of FISA surveillance of Carter Page by the FBI (hereafter "the Nunes Memo"). Information in the memorandum that was classified when it was written was declassified by order of the President on February 2, 2018. The memorandum represents the judgments of its authors and is not a product of the Executive Branch. It summarizes, characterizes, and offers opinions about the much lengthier and more detailed FISA applications submitted by the Department of Justice (DOJ) to the Foreign Intelligence Surveillance Court (FISC), and the orders obtained from the FISC in response thereto. The Nunes Memo does not quote any portions of the FISA applications or FISC orders on Carter Page.

(6)    On February 24, 2018, HPSCI's Democratic Members released a memorandum authored by Adam Schiff, ranking member of HPSCI, in response to the Nunes Memo (hereafter "the Schiff Memo"). The release of certain information from the Schiff Memo was a consequence of the President's decision to declassify the Nunes Memo; the redacted information in the Schiff Memo was not declassified and disclosed in the Nunes Memo and remains currently and properly classified. As with the Nunes Memo, the Schiff Memo represents the judgments of its authors and is not a product of the Executive Branch. It summarizes, characterizes, and offers opinions about the lengthy, detailed FISA applications submitted to the FISC, and the FISC orders obtained in response thereto. Other than one paragraph in the memorandum, the Schiff Memo does not quote any portions of the FISA applications or FISC orders on Carter Page.

(7)    The declassification of the information in the Nunes Memo did not result in the

3

declassification of *all* information in the lengthy and detailed FISA applications or the resulting FISC orders on Carter Page, nor did either memorandum disclose all facts and information contained in those FISA applications and FISC orders.

(8)    Thus, notwithstanding declassification and disclosure of the fact that DOJ sought and obtained authorization to conduct surveillance of Carter Page under FISA and certain related facts, the FISA applications and FISC orders at issue here continue to be very sensitive materials that are part of the on-going Russian interference investigation being overseen by the Special Counsel's Office.  Accordingly, determining what information must now be disclosed under the FOIA requires that the FBI analyze each piece of information in the FISA materials to determine whether it matches information disclosed in the Nunes and Schiff Memos; whether declassification of the Nunes Memo and publication of the Schiff Memo have affected the classification status of information that does not match the disclosed information; and what other FOIA exemptions apply to non-matching information.  Such an analysis of this information had not previously been conducted due to the FBI's initial Glomar response to the FOIA request submitted by Plaintiff.  After the Nunes Memo was released, the FBI began processing the Carter Page FISA applications and FISC orders for determination of what, if anything, can be released under the FOIA, in response to the FOIA request at issue in this case, as well as other requests.

(9)    Identifying matching information and determining the classification and FOIA exemption status of the non-matching information in these FISA materials requires extremely careful and detailed analysis, given the sensitivities of this information.  It is exceedingly rare that the FBI would disclose any substantive information related to an active investigation such as the Russian interference investigation being overseen by the Special Counsel's Office, and it is wholly unprecedented for the Government to disclose FISA applications at all, whether under the

FOIA or otherwise. Thus, any disclosure here is likely to have wide-reaching consequences to operational concerns outside the FOIA process and must be undertaken with all due care and consideration of the wide-reaching impacts on national security and intelligence operations.

(10)     The FBI is undertaking a multi-step, largely iterative process, as described below, in order to facilitate the identification of matching information, the analysis of classification and FOIA exemption status, and the disclosure of any reasonably segregable non-exempt information.

(11)     <u>Matching Review</u>:

(A)     Information that has been officially acknowledged through a documented public release by an agency official must be disclosed. Thus, to the extent that there is a match between information disclosed in the Nunes and Schiff Memos and information in the FISA applications and FISC opinions, the matching information in the FISA materials will have to be disclosed when reasonably segregable from non-exempt information.

(B)     The FBI is currently reviewing all of the relevant materials to identify matching information. Except for one paragraph in the Schiff Memo, the HPSCI memoranda do not quote the FISA applications or FISC orders, which are far longer and more detailed than either of the HPSCI memoranda. Thus, in order to determine whether other information in the Nunes and Schiff Memos matches information in the FISA applications and FISC orders, the FBI has to consider whether particular information in the Nunes and Schiff Memos, when combined with other information in either memorandum, creates a composite that matches information in the FISA applications and FISC orders. This is a detailed and complicated process that requires more than a side-by-side comparison of the Nunes Memo or the Schiff Memo against the FISA materials.

(C)     This process is on-going and will proceed simultaneously with the classification review but must be completed prior to the FOIA review, both of which are discussed below.[1]

(12)    Classification Review:

(A)     As mentioned above, not all information in the FISA applications and FISC orders was declassified as a result of the declassification of the Nunes Memo. Accordingly, the FISA applications and FISC orders must undergo a classification review to determine (i) what has been declassified, and (ii) whether the classification level of other information was affected by the declassification of the information in the Nunes Memo and the publication of the Schiff Memo. This requires analysis of each piece of information in the FISA applications and FISC opinions.

(B)     This is not a typical classification review that can be conducted by RIDS, as it would in most FOIA cases. Rather, because of the nature and sensitivities of the documents at issue, this review is being completed by subject matter experts on the operational equities impacted by the classification determinations at issue here. The review necessarily diverts operational resources from FBI's core mission activities.

(C)     Matching the declassified information in the Nunes and Schiff Memos to the information in the FISA materials is not simply a matter of a side-by-side comparison to transfer the declassification decisions from the HPSCI memoranda to the FISA applications and FISC orders, given that both HPSCI memoranda consist of summaries, characterizations, and

---

[1] The matching review must be completed prior to the FOIA review because any information that matches cannot be exempted. Accordingly, to ensure efficiency and consistency, the FBI intends to identify any matching information that cannot be exempted before beginning to analyze the remaining information for exemptions.

opinions, rather than quotations from the FISA materials (except one instance in the Schiff

Memo).

       (D)     Moreover, determining whether declassification of the Nunes Memo has

affected the classification status of other information in the FISA applications and orders will

require careful analysis of all of the relevant documents (*i.e.*, both HPSCI memoranda and all the

FISA applications and FISC orders), as well as other information that is already publicly known.[2]

       (E)     Finally, given the sensitivities of FISA materials generally and of these

materials specifically, this classification review will be subject to multiple layers of review and

approval from operational divisions across the FBI, and by DOJ, at a minimum.

     (13)    FOIA Exemption Review:

       (A)     Once the matching and classification reviews are completed, RIDS will

conduct a FOIA review of the FISA applications and FISC orders to apply any other applicable

FOIA exemptions. As mentioned above, these FISA materials have not previously been

processed because the FBI issued a Glomar response to Plaintiff's FOIA request. Furthermore,

this will be the first time that FISA applications have been processed for release under the FOIA

or otherwise, and complicated questions about the protection of information in the applications

will have to be resolved prior to any disclosure decisions being made, because such decisions

---

    [2] Classification determinations relative to the FISA applications and FISC orders at issue here are being made in light of the body of information available to the FBI concerning the national defense and foreign relations of the United States. When making classification determinations, the FBI cannot examine information in the FISA applications and FISC orders in isolation but rather must evaluate it with careful consideration given to the impact that its disclosure could have on other sensitive information contained elsewhere in the United States Intelligence Community's files. Consideration must also be given to the impact that other information – both in the public domain and likely known or suspected by present or potential adversaries of the United States – would have upon the information in the FISA applications and FISC orders under review here.

will impact the handling of FISA applications in other cases under the FOIA and otherwise.

(B)    Once RIDS finishes applying FOIA exemptions, the consolidated redactions of classified and other FOIA-exempt information will then be sent to internal and external stakeholders, including DOJ's National Security Division, the Special Counsel's Office, and other affected U.S. Intelligence Community agencies, for final review to ensure that all equities are properly protected and defensible.  Again, FBI has never previously processed FISA applications for production under FOIA or in other litigation, and anticipates this will require extensive consultation and review.

(14)    FISC Unsealing Order:  Finally, assuming that any sealed portions of the FISA applications and/or FISC orders are identified for release after all classification, FOIA exemption, and segregability determinations are made, the Government will have to move to unseal the materials before the FISC and obtain an unsealing order from the FISC in order to make the release.

(15)    The FBI estimates that it will require four months to complete the above-described work, up to and including July 20, 2018.  Specifically, it anticipates completing the matching review and the classification review/approvals within the first two months; the FOIA review and internal/external stakeholder approvals in the following six weeks; and the FISC unsealing and disclosure of any reasonably segregable, non-exempt information within the final two weeks.

8

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this ___16th___ day of March, 2018.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

9