W. GORDON KAUPP, State Bar No. 226141
Kaupp & Feinberg, LLP
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone:     (415) 896-4588
Facsimile:     (415) 294-9127
Email:         gordon@kauppfeinberg.com

COLLEEN FLYNN, State Bar No. 234281
Law Office of Colleen Flynn
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
Telephone:     (213) 252-9444
Facsimile:     (213) 252-0091
Email:         cflynnlaw@yahoo.com

*Attorneys for Plaintiff Kevin Poulsen*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN POULSEN, <br>       Plaintiff, <br><br> vs. <br><br> United States Department of Defense, Office of the Director of National Intelligence, Department of Justice, <br>       Defendants. | Case Number: 17-cv-3531-WHO <br><br> DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ATTORNEY FEE AWARD PER 5 U.S.C. § 552 (a)(4)(E) <br><br> Hearing Date: June 5, 2019 <br> Time: 2:00 p.m. <br> Courtroom: 2 <br><br> Judge: HON. WILLIAM H. ORRICK |

1
*Declaration of Carol Sobel Poulsen v. DOD*, No. 17-cv-3531-WHO

# DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice in the State of California and in the United States District Court for the Central District of California. I make this declaration in support of the concurrently filed motion for an award of attorneys' fees based on facts of which I have personal knowledge and if I were called to testify as a witness to these facts I could and would do so competently.

2. I was admitted to the California Bar in December, 1978, following my graduation from law school in May of 1978. From January 1, 1977 until April 24, 1997, I was employed by the ACLU Foundation of Southern California. For the last seven years prior to my departure from the ACLU, I served as a Senior Staff Counsel. I resigned from the ACLU to begin a private civil rights practice in late April, 1997. I have received numerous awards for my work in the area of First Amendment litigation on behalf of the right to demonstrate and, more recently, on behalf of homeless persons. In 2007, I was awarded California Lawyer of the Year (CLAY) for civil rights. That same year, I was named by the Daily Journal legal newspaper as one of the 100 most influential lawyers in California. I have also been named by the Daily Journal as one of the top 75 women litigators in California multiple times. Most recently, I was included as one of the top 50 women lawyers in Southern California for 2014 by the Super Lawyers publication. I have been named a Super Lawyer in either the First Amendment, Constitutional Law, or Civil Rights category every year since 2004. I have been qualified as an expert in ethics and the practices of public-interest legal groups, including once before the State Bar and once in the Los Angeles Superior Court. A copy of my résumé is attached at Exhibit 1.

3. I have presented at CLEs on attorney fees on several occasions, including training for attorneys at the Legal Aid Foundation of Los Angeles and the ACLU Foundation of Southern California. My supporting fee declarations have been cited favorably by numerous courts, including, among others, in *Nadarajah v. Holder,* 569

F.3d 906, 916–917 (9th Cir. 2009); *Orantes-Hernandez v. Holder,* 713 F.Supp.2d 929, 963–964 (C.D.Cal. 2010); *Torrance Unified Sch. Dist. v. Magee*, CV 07-2164 CAS (Rzx) (C.D.Cal. 2008), [2008 U.S.Dist. Lexis 95074, 21]; *Atkins v. Miller,* CV-01-01574 DDP (C.D.Cal 2007); *Rauda v. City of Los Angeles*, cv 08-3128 CAS (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, B223518 (2d Dist. June 23, 2011) (unpublished); *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 (C.D. Cal. 2014); *Carrillo v. Schneider Logistics*, Case: 12-55042 (9th Cir. 2014); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. January 4, 2018) [Doc. 850, p. 5]; *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); and *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA 02/27/19). *See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012). In *Jochimsen*, the Court held that I was qualified as an expert on reasonable attorney rates in the Los Angeles legal market. More recently, in *Hiken v. DOD*, 2016 U.S. App. LEXIS 16359, Case No. 13-17073 (9th Cir. Sept. 16, 2016), the Circuit held that the lower court erred in rejecting evidence of market rates presented in my declaration and reversed a fee award which significantly reduced the hourly rates sought.

4. My current rate is $1000 an hour. In 2015, I was awarded attorney fees in the Ninth Circuit at the rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). In 2014, in *Desertrain v. City of Los Angeles*, 10-cv-09053 RGK (C.D. Cal. 2015) [Dkt. 143] , I settled the fees for time in the district court and on appeal for $1.1 million dollars, with the appellate fees calculated with the lodestar rate of $875 an hour. In late November of 2015, through a settlement conference in the district court, I resolved the fees in *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), at the full lodestar rate of $875 an hour.

5. Although I often resolve fee awards through settlement, several of my fee

2

awards resulted from contested motions. In 2012 and 2013, I did not receive any fee awards; however, in 2012 I billed and was paid my then full rate of $795 an hour in a case in the Central District in which I was co-counsel for an outside director of a small bank sued by the Federal Deposit Insurance Corporation ("FDIC") in an attempt to recover investment losses. *Federal Deposit Insurance Company v. Faigin*, cv-12-03448 DDP. I generally do not accept hourly paying case; nearly all of my cases are done on contingency for low income persons.

6. In 2008, the federal district court approved the rate of $695 an hour for me in *Jones v. City of Los Angeles*. 444 F.3d 1118 (9th Cir. 2006), *vacated on settlement*, 505 F.3d 1006 (9th Cir. 2007). The fee award was subsequently affirmed by the Ninth Circuit. In 2009 I was awarded fees at $710 an hour in two contested fee motions. The first award was in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009). The second 2009 award was made in a hybrid class action, arising from a police action against a permitted immigration rally in MacArthur Park on May Day 2007, in which I was one of three class counsel appointed by the federal district court. *MIWON v. City of Los Angeles*, CV 07-7032 AHM, 2009 U.S. Dist. LEXIS 132270 (C.D. Cal. 6/24/09). Because the Ninth Circuit requires a lodestar cross-check before approving fees as a percentage of the settlement of a class action, Judge Matz specifically approved my rate. In 2010, I was awarded fees at $725 an hour in a contested fee motion in *Long Beach Area Peace Network v. City of Long Beach*, a First Amendment challenge to a permitting scheme. *See* 574 F.3d 1011 (9th Cir. 2009).

7. As a sole practitioner who works almost exclusively on contingency fee-shifting statutes, I set my rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was employed by the ACLU. When I was at the ACLU, I prepared numerous fee motions under federal and state fee-shifting statutes for cases in which the ACLU represented the prevailing party. I was responsible for preparing these motions both for cases where I was

directly involved in the underlying litigation, as well as in cases brought by other staff attorneys and volunteer counsel for the ACLU. As part of this assignment, each year I surveyed several law firms to obtain information on their current billing rates to establish rates for individuals of comparable experience to ACLU staff. I chose firms where the partners were extremely familiar with the experience levels of the ACLU attorneys and had co-counseled cases with the ACLU. I apply a similar practice for fee motions when I serve as ACLU cooperating counsel and in my private practice.

8. Since entering private practice, I review billing rates at firms the first time in each year I prepare a fee motion or enter into settlement discussions regarding fees to ascertain current market rates. I make it a point to obtain rate information for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms and public interest legal organizations. I regularly review fee motions submitted by, and awards made to, the ACLU Foundation of Southern California, the Mexican America Legal Defense and Educational Fund ("MALDEF"), the Western Center on Law and Poverty, Public Counsel, the Disability Rights Legal Center, Disability Rights Advocates and other public interest groups that litigate in California to determine what is being sought and awarded as market rates. Although I frequently file a declaration in support of fee applications filed by these non-profit groups, I am usually not the only declarant

9. In all of the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See also, Nadarajah v Holder,* 569 F3d at 910.

1    10.    I apply several principles to establish reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases because I understand that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 976 (9th Cir. 2008).

11.    Next, I look to evidence of billing rates by other civil rights attorneys and those engaged in similarly complex business litigation as an approved method of establishing reasonable market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach, approved by the federal courts, recognizes that most civil rights attorneys are not paid hourly for their services at market rates. *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012). "Attorney affidavits regarding prevailing fees in the community and rate determinations in other cases" may also provide "satisfactory evidence of the prevailing market rate." *Perfect 10, Inc. v. Giganews, Inc.*, 2015 U.S. Dist. LEXIS 54063, *14, Case No. CV 11-07098-AB (Shx) (C.D. CA 2015), citing, *inter alia*, *United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir.1990)* (same).

12.    Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

13.    I estimate that I review dozens of fee motions, fee awards, and supporting declarations in the course of a year. I obtain this information from recent court orders awarding statutory fees or fees as a discovery sanction. I also subscribe to several legal news websites. If I learn of a case where there is a fee motion, I obtain a copy of the motion, supporting declarations and any fee award from public sources, including the Los Angeles Superior Court website or PACER.

14. I am informed that fees are being sought for the following attorneys. For

5

each attorney, I have included the year of admission and the rates for 2017 through 2019, as applicable. In 2018, Mr. Kaupp had 15 years of experience, Ms. Flynn had 14 years of experience, and Ms. Feinberg had 13 years of experience.

| Attorney | Admission | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| Gordon Kaupp | 2003 | $675 | $715 | $730 |
| Colleen Flynn | 2004 | $660 | $675 | $700 |
| Beth Feinberg | 2005 | | $655 | |

15. In my experience, these rates are within the range of reasonable rates for comparably skilled and experienced attorneys in the Northern District of California. To prepare my declaration, I reviewed fee awards in both the Northern District and the Central District of California. In my experience, attorneys at civil rights, public interest and large firms practice state-wide and apply the same rates in both the Northern and Central Districts of California. The parity of rates in these two legal markets was noted in *Minor v. Christie*, 2011 U.S. Dist. LEXIS 9219, *22 [C-08-0545] (N.D. Cal. 2011) ("While the relevant community is San Francisco, and not Los Angeles or New York where the lawyers [in Minor] predominantly practice, the parties agree that the Los Angeles, San Francisco, and New York communities have comparable community rates."). The same is true for civil rights lawyers who practice statewide. *See e.g.*, Exhibit 3 (Declaration of Paradis, *LAUSD v. Garcia*, 09-cv-9289 VBF (C.D. Cal.), Ninth Circuit Case No. 10-55879), attesting that rates in the Central District are "generally comparable" to those in San Francisco and that "DRA does not make a distinction in its rates between Southern and Northern California cases." Ex. 3 ¶ 17, lines 7-10. In Exhibit 6, *Jewett v. Shasta County Sheriff's Dept.*, the attorneys for plaintiffs included both DRLC, based in Los Angeles, and several Northern California firms. The rates sought by the attorneys at each of the public interest law firms was consistent by experience regardless of whether the attorneys were based in the Central District or the Northern District of California.

16. The rates sought by this motion seek a modest increase for each year. In

*Armstrong v. Brown*, 94-cv-002307 CW (N.D. Cal. Aug. 8, 2011) Dkt. #1919, the Court approved even greater annual percentages than are sought by this motion. Responding to the State's argument that the proposed increases in rates from 2008 to 2010 for plaintiffs' attorneys were too great, the Court noted that the 5 percent increase in rates each year "reflects only the across-the-board rise in firms' overall rates, not the increase in individual attorney's hourly rates for the additional experience accrued over the two-year period." *Id.* at *5. Among the evidence Judge Wilken cited to for this point was the declaration of Bingham McCutcheon attorney Geoffrey Holtz, pro bono counsel in *Armstrong*, and state regulations providing for "merit" increases beyond the annual salary schedule increase. *Id.* The net result in *Armstrong* was an increase of more than one-third for associates in two years.

17. To analyze annual increases in rates, I apply the legal services component of the rise in the cost of living as published by the Bureau of Labor Statistics. *See* http://www.bis.gov/news.release/cpi.102.htm (Table 2. Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, by detailed expenditure category. The annual increase for the past several years has been approximately 3.1 percent. *Id.* This calculation only reflects a comparable dollar value for a prior year's rate but does not reflect any increase based on the additional experience of the attorney, or any increase in base rates.

18. Attached at Exhibit 2 is the Declaration of Laurence Paradis filed in 2014 in support of the fee motion in *Los Angeles Unified School Dist. v. Garcia,* Case No. 10-55879 (C.D. Cal. 2014). Although the 2014 Paradis declaration attesting to DRA 2013 rates is provided to show the reasonableness of the requested 2019 rates by this motion, I recognize that these rates are significantly outdated. In *Hiken v. DOD*, the Ninth Circuit cautioned that a rate that is more than two years old is not a current rate. 836 F.3d at 1040. Nonetheless, the 2013 DRA rates support the reasonableness of the rates requested by this motion. For example, the rate for Stuart Seaborn, then with 15 years experience, was $655 an hour and for Shawna Parks, then with 14 years

experience, $675 an hour. Ex. 2, p. 10. The 2013 rate for Shawna Parks, then with 14 years of experience, is exactly the same rate requested by Ms. Flynn for 2018, also with 14 years of experience. Similarly, Stuart Seaborn's 2013 rate of $655 an hour, with 15 years of experience then, is only $75 an hour below the rate now sought for Mr. Kaupp, with 16 years of experience in 2019 and only $45 an hour below the 2019 rate sought for Ms. Flynn, now with 15 years of experience. Applying the cost-of-living increase to the 2013 DRA rates, the equivalent 2019 rate for attorneys with comparable experience would be approximately $780 to $800 an hour, approximately $20 an hour per year increase. The 2019 rate sought for Mr. Kaupp and the rate sought for Ms. Flynn are both within this adjusted 2013 rate. As further illustration, Mr. Kaupp's rate is $55 an hour higher than the 2013 rate for Ms. Parks. Over the course of six billing years, that averages out to only $9 an hour increase. Similarly, Ms. Flynn's rate is only $25 an hour higher than Ms. Parks' 2013 rate, which averages out to approximately $4 an hour increase over six billing years.

19. Exhibit 3 is a true and correct copy of the Stipulated Order approving fees in *Armstrong v. Brown*, Case No. C94 2307 CW (N.D. CA 9/12/18) for attorneys at the Prison Law Office and the law firm of Rosen, Bien, Galvan & Grunfeld. The Order approving fees in *Cole v. Santa Cruz*, 16-cv-06594 (N.D. CA 3/21/19) [Doc.86]. In *Cole*, the Court approved the rates of $775 for Stuart Seaborn and $655 for Mary-Lee Smith. Ex. 3, p. 24, lines 3-4. The declarations of counsel filed in support of the motion in *Cole* are attached at Exhibits 4 and 5. Based on my review of those declarations, I believe that Mr. Seaborn is a 1998 law graduate and Mary-Lee Smith is a 2005 law graduate. The rate requested for Beth Feinberg, also a 2005 law graduate, is exactly the same as the 2019 rate approved for Ms. Smith in *Cole*.

20. In Exhibit 3, the Court also approved the 2018 rate of $675 an hour for Penny Godbold and Corene Kendrick, identified as 2003 law graduates. Their approved 2018 rate of $675 an hour is $20 above the 2019 rate now sought for Ms. Feinberg, a 2005 law graduate with one year less experience in 2019 than Ms. Godbold

8

| | |
|---|---|
| 1 | and Ms. Kendrick had in 2018. Ex. 3, p. 14.  This is approximately five percent below |
| 2 | the 2018 rate sought by Mr. Kaupp, also a 2003 law graduate. |

21. Attached at Exhibit 4 is a true and correct copy of the Declaration of Lisa Ells in *Cole*, attesting to the rates for attorneys at "RBGG".  Ms. Ells attested that she is a 2005 law graduate and her 2019 rate for the matter was $650 an hour, just $5 an hour below the 2019 rate sought for Ms. Feinberg. Ex. 4, ¶ 17.

22. Attached at Exhibit 5 is the Declaration of Stuart Seaborn of DRA, filed in support of the motion for attorney fees in *Cole* and attesting to the 2018 rates for attorneys at DRA.  Mr. Seaborn attested that he is a 1998 law graduate with a 2018 rate of $775 an hour, and that Mary-Lee Smith, a 2005 law graduate, was billed at $655 an hour in 2019. Ex. 5, ¶ 15.  Ms. Smith's rate is the same as the 2019 rate sought for Ms. Feinberg, also a 2005 law graduate.  Mr. Seaborn's 2018 rate is $45 above the rate now sought for Mr. Kaupp, with four years of experience differential between them.

23. Attached at Exhibit 6 s a true and correct copy of the Declaration of Maronel Barajas of Disability Rights Legal Center ("DRLC") filed in the Eastern District of California in *Jewitt v. Shasta County Sheriff's Dept.*, Case 2:13-cv-00882-MCE-AC (E.D. Cal. 2018) [Doc. 135-5], in support of the motion for fees in coordination with the motion for approval of the class-action settlement.  Although the case was filed in the Eastern District, the attorneys applied the rates in their home markets - the Central and Northern Districts - because no local attorneys were available in the Eastern District to handle the case.  In *Jewett*, Ms. Barajas attested to the fact that she is a 2003 law graduate and that she received an award of $675 an hour in 2017 in the *Garcia* case.  She also attested to a 2018 rate of $715 an hour. Ex. 6, ¶¶ 14, 20.  I am aware from reviewing the docket in *Jewett* and communicating with Anna Garcia, the managing attorney for DRLC, that the fees were settled in *Jewett* before the Court ruled on the motion.

24. In *Jewett*, Ms. Barajas also attested to the year of graduation and rate for

Anna Rivera. Based on my review of *Jewett* and my preparation of supporting declarations for DRLC in several cases, including *Garcia*, I am aware that Ms. Rivera is a 2005 law graduate. Her 2018 rate in *Jewett* was $690 an hour. Ex. 6, ¶¶ 21, 25. This rate is slightly more than five pecent above the 2018 rate requested for Beth Feinberg, also a 2005 law graduate.

25. Attached at Exhibit 7 is a true and correct copy of the Declaration of Anna Rivera of the DRLC filed in support of the motion for attorney fees in *Garcia v. Los Angeles County Sheriff's Dept.*, 731 F.3d 922 (9th Cir. 2014), CV 09-08943 DMG [Doc. 443] (C.D. CA 2017). In *Garcia*, Ms. Rivera attested to the 2017 rates for, and experience of, several attorneys at DRLC. These included Shawna Parks, a 1999 law graduate then with 18 years of experience and a rate of $745 an hour; Maronel Barajas, then with 14 years of experience and a 2017 rate of $675 an hour; Matthew Strugar, a 2004 law graduate then with 13 years of experience and a 2017 rate of $660 an hour; and Umbreen Bhatti, a 2005 law graduate then with 12 years of experience and a rate of $640 an hour. Ex. 7, ¶¶ 26, 30, 32, 38–41, 43. .

26. The rates discussed above are set out in the table below.

| Ex. | Attorney | Org. | Experience | Award | Rate |
|---|---|---|---|---|---|
| 2 | Shawna Parks | DRA | 14 | 2013 | $675 |
| 2 | Stuart Seaborn | DRA | 15 | 2013 | $655 |
| 3 | Pennyy Godbold | RBGG | 15 | 2018 | $675 |
| 3 | Corene Kendrick | RBGG | 15 | 2018 | $675 |
| 4 | Lisa Ells | RBGG | 14 | 2019 | $650 |
| 5 | Stuart Seaborn | DRA | 21 | 2019 | $775 |
| 5 | Mary-Lee Smith | DRA | 14 | 2019 | $655 |
| 6 | Maronel Barajas | DRLC | 15 | 2018 | $715 |
| 6 | Anna Rivera | DRLC | 13 | 2018 | $690 |
| 7 | Shawna Parks | DRLC | 18 | 2017 | $745 |

10

| | | | | | |
|---|---|---|---|---|---|
| 7 | Maronel Barajas | DRLC | 14 | 2017 | $675 |
| 7 | Matthew Strugar | DRLC | 13 | 2017 | $660 |
| 7 | Umbreen Bhatti | DRLC | 12 | 2017 | $640 |

27. Based on the foregoing, it is my opinion that the rates sought by this motion are reasonable for comparably skilled and experienced attorneys in the Northern District of California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of April, 2019 at Santa Monica, California.

*Carol A. Sobel*

CAROL A. SOBEL