HASHIM MOOPPAN
Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch
AMY POWELL
Trial Attorney (NY Bar)
Department of Justice, Civil Division
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Email: amy.powell@usdoj.gov
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| KEVIN POULSEN,<br><br>               Plaintiff,<br><br>    vs.<br><br>United States Department of Defense,   Office of the Director of National Intelligence, Department of Justice,<br><br>               Defendants. | Case Number: 17-cv-3531<br><br>Defs' Opp'n to Plaintiff's Motion for Fees |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................... 8

I.    FOIA Fee-Shifting Provisions ................................................................. 8

II.   Plaintiff is Not Eligible For Fees. ......................................................... 12

III.  Plaintiff is Not Entitled To Fees. ......................................................... 16

IV.   Any Fee Award Should Be Substantially Discounted For Work on Unsuccessful
      or Partially Successful Claims. ............................................................ 19

V.    Fees-on-Fees Should Also Be Substantially Discounted. ....................... 23

CONCLUSION .............................................................................................................. 24

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

# TABLE OF AUTHORITIES

**CASES**

*A.S. v. Dist. of Columbia,*
    842 F. Supp. 2d 40 (D.D.C. 2012) ........................................................... 23

*Brayton v. Office of the U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) .................................................................. 13

*Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.,*
    11 F.3d 211 (D.C. Cir. 1993) .................................................................... 13

*Church of Scientology of Cal. v. U.S. Postal Serv.,*
    700 F.2d 486 (9th Cir. 1983) ............................................................. *passim*

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*
    820 F. Supp. 2d 39 (D.D.C. 2011) ........................................................... 16

*Citizens for Responsibility & Ethics in Wash. v. DOJ,*
    825 F. Supp. 2d 226 (D.D.C. 2011) ......................................................... 21

*Comty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy,*
    305 F.3d 943 (9th Cir. 2002) ................................................................... 11

*Corder v. Brown,*
    25 F.3d 833 (9th Cir. 1994) ..................................................................... 20

*Davy v. CIA,*
    550 F.3d 1155 (D.C. Cir. 2008) ............................................................... 18

*Ecological Rights Found. v. FEMA,*
    365 F. Supp. 3d 993 (N.D. Cal. 2018) ................................................. 9, 10

*Elec. Privacy Info. Ctr. v. DHS,*
    999 F. Supp. 2d 61 (D.D.C. 2013) ........................................................... 21

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ................................................................................. 10

*First Amendment Coal. v. DOJ,*
    878 F.3d 1119 (9th Cir. 2017) ............................................... 9, 12, 13, 15

*Greater L.A. Council on Deafness v. Cmty. TV of S. Cal.,*
    813 F.2d 217 (9th Cir.1987) .................................................................... 10

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
  293 F. Supp. 3d 17 (D.D.C. 2017) ................................................................... 20, 21

*Harris v. Marhoefer,*
  24 F.3d 16 (9th Cir. 1994) ............................................................................... 12, 22

*Harris v. McCarthy,*
  790 F.2d 753 (9th Cir. 1986) ................................................................................. 23

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) .......................................................................... 10, 11, 20, 22

*INS Commissioner v. Jean,*
  496 U.S. 154 (1990) ............................................................................................... 23

*Jankey v. Beach Hut,*
  No. CV05-3856 SVW (JTLX), 2006 WL 4569361 (C.D. Cal. Dec. 19, 2006) ...................... 22

*Judicial Watch v. U.S. Dep't of Commerce,*
  470 F.3d 363 (D.C. Cir. 2006) ............................................................................... 10

*Judicial Watch, Inc. v. DOJ,*
  878 F. Supp. 2d 225 (D.D.C. 2012) ................................................................... 11, 20

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.,*
  No. 3:10-CV-01397-SI, 2014 WL 3546858 (D. Or. July 15, 2014)................................... 12, 21

*Long v. IRS,*
  932 F.2d 1309 (9th Cir. 1991) ................................................................................. 8, 10

*Mahach-Watkins v. Depee,*
  593 F.3d 1054 (9th Cir. 2010) ............................................................................... 12, 22

*Morley v. CIA,*
  810 F.3d 841 (D.C. Cir. 2016) ............................................................................... 17

*Nationwide Bldg. Maint., Inc. v. Sampson,*
  559 F.2d 704 (D.C. Cir. 1977) ............................................................................... 18

*Or. Nat. Desert Ass'n v. Locke,*
  572 F.3d 610 (9th Cir. 2009) ................................................................................. 9

*Outdoor Sys., Inc. v. City of Mesa,*
  997 F.2d 604 (9th Cir. 1993) ................................................................................. 20

*Pohl v. EPA,*
  Civ. No. 09-1480, 2012 WL 762083 (W.D. Pa. March 7, 2012)................................... 16

Page **iii** of **iv**

*Rodriguez v. Barrita, Inc.*,
   53 F. Supp. 3d 1268 (N.D. Cal. 2014) ....................................................................... 11, 22

*Rosenfeld v. DOJ*,
   904 F. Supp. 2d 988 (N.D. Cal. 2012) ................................................................. 10, 17, 18

*Sorenson v. Mink*,
   239 F.3d 1140 (9th Cir. 2011) ......................................................................................... 20

*Thompson v. Gomez*,
   45 F.3d 1365 (9th Cir. 1995) ........................................................................................... 23

*Thorne v. City of El Segundo*,
   802 F.2d 1131 (9th Cir. 1986) ......................................................................................... 11

*Waage v. IRS*,
   656 F. Supp. 2d 1235 (S.D. Cal. 2009) ............................................................................ 16

*Webb v. Ada Cty.*,
   195 F.3d 524 ..................................................................................................................... 23

*Weisberg v. DOJ*,
   745 F.2d 1476 (D.C. Cir. 1984) ....................................................................................... 11

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ..................................................................................... 21, 23

## STATUTES

5 U.S.C. § 552 ............................................................................................................. passim

## OTHER AUTHORITIES

S. Rep. No. 93-854 (1974) ................................................................................................ 18

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiff's broad Freedom of Information Act ("FOIA") request for documents related to surveillance of the Trump Campaign was without merit, this litigation resulted in no public benefit, and the Government's position was entirely correct at every stage of the litigation. Defendants United States Department of Justice ("DOJ"), Department of Defense, and the Office of the Director of National Intelligence ("ODNI") oppose an award of fees to Plaintiff, and even if such an award were appropriate, it should be substantially reduced for limited success.

As an initial matter, the claims related to FOIA requests to ODNI and the Department of Defense National Security Agency ("NSA") failed in their entirety. Plaintiff obtained no legal victory against those agencies, and those agencies did not produce any documents. Rather, ODNI and NSA consistently and correctly refused to confirm or deny existence of responsive documents in their possession, consistent with long-standing precedent, and the Court upheld these determinations entirely. Plaintiff's decision to package those requests to other agencies in the same lawsuit with claims about separate requests made to DOJ components does not entitle him to fees on claims he undisputedly lost. Remarkably, the majority of the fees claimed by Plaintiff are based on time spent on the wholly unsuccessful motion filed specifically against NSA and ODNI.

With respect to the DOJ components, multiple other FOIA requestors across the country made similar requests. Like these other requestors, Plaintiff prevailed on no substantive motions, and the Government's position has been proven correct at every stage of the litigation. After the Government moved for summary judgment, external events that were entirely unrelated to litigation partially waived a portion of DOJ's original position, and led the Government to withdraw its first motion for summary judgment and propose a schedule for the production of one category of responsive documents – the FISA applications and orders related to Carter Page. Consistent with the approach taken in multiple other FOIA cases brought by other litigants

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

seeking the exact same documents, this Court adopted the schedule proposed by DOJ, and DOJ then processed and produced the documents in accordance with its proposed schedule. The Court later upheld DOJ's revised position, which was tailored to the public disclosures that led to withdrawal of the original motion. In other words, DOJ's position in the first motion for summary judgment has also been vindicated; the position was minimally altered only by external events, which the Government quickly acknowledged and accounted for in subsequent briefing. Plaintiff's original complaint has been proven wholly meritless; it was meritless at the time it was filed, and the challenges to the change in the Government's position were also rejected. Plaintiff does not become eligible and entitled to full fees for the accident of filing a meritless FOIA lawsuit when later events outside his influence or control led to release of some small fraction of the information sought.

Despite the completely meritless nature of the lawsuit, Plaintiff now seeks fees as a "substantially prevailing" party under FOIA, for all fees, no matter how incurred or on what claims, up through a date in November 2018 on which Plaintiff claims he received additional information. The motion for fees appears to be filed seeking compensation for time spent on claims against all Defendants, including those who never produced documents and never changed position. Here, Plaintiff's wholly unsuccessful claims (those against NSA and ODNI, and those challenging the redactions and withholdings in the second round of briefing), are readily segregable from the claims for which Plaintiff received partial success as a result of external events; the scope of DOJ's original Glomar was narrowed to account for the public acknowledgement of the Page FISA applications. Accordingly, even if the Court finds Plaintiff both eligible for and entitled to fees, those fees should be reduced for limited success.

## BACKGROUND

This matter arises from several FOIA requests submitted to NSA, ODNI, the Federal Bureau of Investigation ("FBI"), DOJ National Security Division ("NSD"), and DOJ Office of

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

Legal Counsel ("OLC"). The requests, submitted in March 2017, are each slightly different, but generally speaking, sought multiple categories of documents concerning or derived from "electronic surveillance conducted by a U.S. Government agency or contractor, of the oral, electronic or digital communications of Donald Trump or any of his advisors on or between June 16, 2015 and November 8, 2016." *See* Declaration of Patricia Gaviria of ODNI, Dkt. No. 50-1, ¶ 10 & Ex. A; Declaration of Steven E. Thompson of NSA, Dkt No. 50-3, ¶ 13; Third Declaration of David M. Hardy of FBI, Dkt. No. 66-1, ¶ 14 (citing First Declaration of David M. Hardy ¶ 5 & Ex. A, Dkt. No. 31-1); Declaration of Patrick Findlay of NSD, Dkt. No. 66-2, ¶ 4; Second Declaration of Paul Colborn, Dkt No. 66-3, ¶ 8 & Ex. A.  For example, the ODNI request seeks "documents held by ODNI concerning or derived, in whole or in part, from" such surveillance, as well as "[l]egal analyses, memoranda, court orders, meeting notes, affidavits, e-mail, reports, calendar entries, documents, presentation slides, petitions, applications, motions and appeal briefs" concerning or derived from such surveillance. Gaviria Decl. ¶ 10. In addition to the general categories of documents, the requests also sought, using varying wording: "Recordings of such intercepted communications;" "Metadata captured from such intercepted communications;" and "Transcripts of such intercepted communications." Gaviria Decl. ¶ 10; Thompson Decl. ¶ 13; 3rd Hardy Decl., ¶ 14; Findlay Decl. ¶ 4, Colborn Decl. ¶ 8.  The request directed to the FBI also sought "[e]ntries pertaining to such surveillance found in FBI databases, including but not limited to the FBI's ELSUR Data Management System and the FBI's Case Management System."  3rd Hardy Decl., ¶ 14.

Each component acknowledged receipt of the request.  Gaviria Decl. ¶ 11; Thompson Decl. ¶ 15.  NSA, FBI, and NSD formally issued Glomar determinations – refusing to confirm or deny the existence of responsive records.  Thompson Decl. ¶¶ 15, 18; 3rd Hardy Decl. ¶ 14; Findlay Decl. ¶ 5.  ODNI and OLC had not made a final determination at the time this suit was filed.  Gaviria Decl. ¶¶ 13, 17; 2nd Colborn Decl. ¶ 10.  The Complaint was filed June 19, 2017.

*See* Compl.  Plaintiff asserted claims against all Defendants for failure to produce documents and failure to conduct adequate searches.  When the parties filed the joint case management conference statement in October 2017, Defendants identified three cases already filed seeking similar categories of documents.  Dkt. No. 17 at 5-6.  (Additional cases were filed later).

When the parties briefed summary judgment in the fall of 2017, ODNI and NSA made a "Glomar" response – that is, they refused to confirm or deny the existence of responsive documents based on Exemptions 1 and 3.  *See generally* Dkt. No 31.  The DOJ components acknowledged the March 2017 public statement of then-FBI Director Comey that certain specified records did not exist, but otherwise refused to confirm or deny the existence of responsive records, based on Exemptions 1, 3, 7A and 7E.  *Id.*

Plaintiff's FOIA request originally arose in a factual context in which the Department had acknowledged a national security investigation of "the Russian government's efforts to interfere in the 2016 presidential election[, including . . . ] the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts [and . . .] an assessment of whether any crimes were committed."  *See Statement Before the House Permanent Select Committee on Intelligence* (March 20, 2017), https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation; 3rd Hardy Decl. ¶ 12 & n.2.

In March 2017, the House Permanent Select Committee on Intelligence ("HPSCI") announced an investigation into "the Russian active measures campaign targeting the 2016 U.S. election" and later added additional areas of inquiry, including allegations of claimed "FISA abuse."  *See* 3rd Hardy Decl. ¶ 13.  HPSCI's review led to competing memoranda authored by the Majority and the Minority members – often referred to by the names of the Chairman and the Ranking Member, *i.e.*, as the "Nunes Memo" and the "Schiff Memo."  Both memoranda were

1    initially classified because, at a minimum, they revealed FISA-authorized surveillance on an

2    identified target – Carter Page – which was a properly classified fact.  *Id*. ¶ 17.

3         In February 2018, President Trump authorized the declassification of the Nunes Memo,

4    dated January 18, 2018. *See* 3rd Hardy Decl. ¶ 19; Findlay Decl. ¶ 8;

5    http://intelligence.house.gov/uploadedfiles/memo_and_white_house_letter.pdf.  As set forth in a

6    February 2, 2018, letter from the White House Counsel, the Nunes Memo was declassified "in

7    light of the significant public interest in the memorandum," and "reflects the judgments of its

8    congressional authors."  *See* 3rd Hardy Decl. ¶¶ 19, 22.  Approximately three weeks after the

9    public disclosure of the Nunes Memo, an unclassified, redacted version of the Schiff Memo was

10   released; that memo was dated January 29, 2018 and addressed to All Members of the House of

11   Representatives.  *See* 3rd Hardy Decl. ¶¶ 20-22, also available at

12   https://intelligence.house.gov/uploadedfiles/ hpsci_redacted_minority_memo.pdf (last visited

13   May 16, 2019).  Prior to its release, the FBI reviewed the Schiff Memo and redacted classified

14   information unaffected by the President's declassification of the Nunes Memo.  *See* 3rd Hardy

15   Decl. ¶¶ 20-22.  The FBI did not declassify additional information as part of this review.  *Id*.

16   Neither the Committee Majority nor the Committee Minority asked the FBI or the Department to

17   opine on their judgment or conclusions, and neither the FBI nor the Department did so; rather,

18   both memoranda reflect the judgments of their congressional authors. *Id*.

19        Because the declassification of the Nunes Memo and the subsequent release of the

20   redacted Schiff Memo both revealed the existence of certain FISA applications and orders to

21   conduct surveillance of Carter Page, the Government moved to withdraw its motion for summary

22   judgment, explaining that these events "require[d] the government to carefully review those

23   records to determine what information contained in the records has been declassified."  Dkt. No.

24   42.  The Court granted the Government's motion over Plaintiff's objection.  On March 20, 2018,

25   the Government informed the Court that "NSA and ODNI expect to maintain their Glomar

Page **5** of **24**

1   responses, including refusing to confirm or deny whether they have an intelligence interest in

2   any particular individual," and requested "additional time, up to and including July 20, 2018 to

3   complete processing of documents by NSD and FBI." Dkt. No. 45. This was the timeline adopted

4   by another court for the processing of the same materials, and the proposal was supported by a

5   declaration explaining the difficulty of reviewing these materials. *Id*. The same proposed

6   schedule was accepted by multiple courts – one prior to the scheduling order in this case. *See*

7   *James Madison Project, et al. v. DOJ*, No. 17 Civ. 597-APM (D.D.C.) (Dkt. Entry Dated Mar.

8   19, 2018); *Gizmodo Media Group, LLC v. DOJ*, 17 Civ. 3566-DLC (S.D.N.Y.) (Dkt. No. 44);

9   *New York Times v. DOJ*, 18 Civ. 2054 (S.D.N.Y.) (Dkt. No. 11); *Judicial Watch v. DOJ*, 18-CV-

10  245 (D.D.C.) (status reports, Dkt. Nos. 7, 8).

11      Although the Government proposed that all Defendants proceed on the same schedule, by

12  Minute Order dated March 27, 2018, the Court set separate schedules for NSA/ODNI and for the

13  DOJ components. Dkt. No. 46. The Court set a briefing schedule for NSA and ODNI, and

14  adopted the proposed schedule for the DOJ components. The Court ordered the parties to submit

15  a status report regarding the DOJ components after processing was complete. *Id*.

16      Accordingly, briefing proceeded with respect to NSA and ODNI, who maintained their

17  Glomar responses, refusing to confirm or deny the existence of responsive documents. Dkt. No.

18  50. A hearing was held on September 5, 2018, and the motion was taken under consideration.

19  Dkt. No. 60.

20      As scheduled, DOJ released the acknowledged Carter Page FISA applications and orders

21  on July 20, 2018. Due to the timeframe of the request, only one of them was deemed responsive

22  to this request, although 3 other sets of applications and orders were released pursuant to other

23  FOIA requests. 3rd Hardy Decl. ¶ 26; Findlay Decl. ¶ 10.[1] The only additional releasable

---

[1] Although Carter Page was not associated with the Trump campaign when the initial FISA order
was obtained, the Plaintiff's request was interpreted liberally, and the first Page FISA application

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

document deemed responsive in this matter was the first proposed application submitted to the FISC, in accordance with FISC Rule of Procedure 9(a), in October 2016 in advance of the submission of the original application to conduct surveillance on Carter Page.  3rd Hardy Decl. ¶ 41 n.13.  The proposed application was released on November 9, 2018, prior to further briefing on DOJ's withholdings, and this release was substantively identical to the final application.  *Id.* In other words, no new information was released after July 20, 2018.

At the hearing on September 5, 2018 on the NSA/ODNI motions, the Court also set a schedule with respect to the DOJ motion.  On November 9, 2018, DOJ moved for summary judgment defending the redactions of the acknowledged Carter Page application and order, defending the withholding of other material related to the acknowledged application, and otherwise maintaining the Glomar response.  *See generally* Dkt. No. 66.  The original Glomar response was thus amended to account for the President's declassification decision and related public information.  A hearing was held on February 6, 2019.  Dkt. No. 76.

On March 22, 2019, the Court granted both of the Government's motions for summary judgment.  Dkt. No. 78.  The Court found "that the government has demonstrated substantial grounds to maintain the Glomar responses to everything except the documents necessarily covered by the limited public acknowledgment of the electronic surveillance of Carter Page."  *Id.* at 1.  The Court also reviewed "the justifications for redacting and withholding with respect to that limited set of acknowledged documents," and found that "the government has adequately justified its redactions and withholdings."  *Id.*

Plaintiff now seeks attorneys' fees and costs incurred up through November 9, 2018. Based on an email from Plaintiff's counsel, the total demand is currently $163,351.10 [2]

was deemed to be responsive to that portion of Plaintiff's FOIA request that seeks surveillance concerning Trump's advisors.

[2] Undersigned counsel followed up with Plaintiff's counsel after the motion was filed, and Plaintiff agrees that there was no release in December 2018, as mistakenly indicated in the

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

Plaintiff's fee motion fails for three reasons.  First, Plaintiff is not eligible for fees because he did not substantially prevail by causing Defendants to release documents; rather, Defendants shifted position and released the responsive Carter Page materials because of events wholly external to this litigation.  Second, Plaintiff is not entitled to fees because this litigation resulted in no public benefit and because the Government's position was substantially justified and indeed correct at every stage of the litigation.  Third, even if Plaintiff were both eligible for and entitled to fees, the award should be substantially reduced to account for segregable, unsuccessful claims, and overall lack of success.

## I.        FOIA Fee-Shifting Provisions

FOIA's fee-shifting provision grants courts discretion "to assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "Substantially prevailed" means that a "complainant has obtained relief through either ... a judicial order, or an enforceable written agreement or consent decree; or ... a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  *Id.* Fee and cost awards are not automatically awarded to a prevailing party under FOIA.  *See Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983).  Rather, plaintiffs "must present convincing evidence" that they are both *eligible for* an award of attorney's fees and that they are *entitled to* such an award.  *Id.* at 489, 492; *see also Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991).

_____

motion.  Undersigned counsel inadvertently copied Plaintiff's counsel on an email about a different, unrelated case on December 4, 2018, but that email did not relate to this case and was not a release of responsive documents here.  Accordingly, Plaintiff now seeks fees up through November 9, 2018.  *See* Declaration of Amy Powell & Ex. (highlighting in green hours spent working from Nov. 9, 2018 up until the beginning of fees-related entries).

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

To be eligible for an award, a party must show that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information," and that "(2) the filing of the action had a *substantial causative* effect on the delivery of the information." *Church of Scientology*, 700 F.2d at 489; *Ecological Rights Found. v. FEMA*, 365 F. Supp. 3d 993 (N.D. Cal. 2018). The Ninth Circuit has rejected efforts to read this causation requirement out of the statute, emphasizing that "there still must be a causal nexus between the litigation and the voluntary disclosure or change in position by the Government." *First Amendment Coal. v. DOJ*, 878 F.3d 1119, 1128 (9th Cir. 2017).[3] The Court specifically noted that obtaining documents alone is not sufficient to establish that a party "substantially prevailed" because "[t]here may be a host of reasons why the Government has voluntarily released information after the filing of a FOIA lawsuit. One obvious example is that previously classified information may have subsequently become unclassified for reasons having nothing to do with the litigation . . . ." 878 F.3d at 1128.

Once a court determines a party is eligible for an award, it exercises its "discretion to determine whether the plaintiff is entitled to fees." *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009); *see also Church of Scientology*, 700 F.2d at 489 (entitlement to an award of fees under FOIA is a separate analysis; a "determination of eligibility does not automatically

---

[3] All three judges in First Amendment Coalition wrote separately. Although Judge Block and Judge Murguia clearly adopted a causation requirement, Judge Berzon wrote that there was "no majority" for imposing a causation requirement. *First Amendment Coal.,* 878 F.3d at 1131. The other two judges on the panel, however, disagreed. *See id*. at 1128 (Block, J.) ("Judge Murguia and I believe that we should join our sister circuits in holding that, under the catalyst theory, there still must be a causal nexus between the litigation and the voluntary disclosure or change in position by the Government."); *id*. at 1139 (Murguia, J) ("I join in the analysis of part II of the opinion, finding that recovery under a catalyst theory continues to require causation."). Judge Berzon's insistence to the contrary appears to be based on Judge Murguia's alternative theory regarding alleged conduct of the Government unique to that case that is not based on the catalyst theory. Even if that were correct, the alternative analysis is not applicable here and it is plain that two judges agreed that causation is generally an element of a catalyst claim for fees like that made here.

Page **9** of **24**

entitle the plaintiff to attorney's fees."). In making this determination, courts consider "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Id.* at 492. These "criteria are not exhaustive, however, and the court may take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." *Long*, 932 F.2d at 1313 (citation omitted). The Ninth Circuit has made clear that "[t]he decision to award attorney's fees is left to the sound discretion of the trial court." *Rosenfeld v. DOJ*, 904 F. Supp. 2d 988, 994 (N.D. Cal. 2012) (quoting *Church of Scientology*, 700 F.2d at 492).

If a court determines that a party is both eligible and entitled to an award, that party "must submit [a] fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long*, 932 F.2d at 1313-14. If these two figures are reasonable in light of the difficulty of the case and the skill of the attorneys involved, there is a presumption that this calculation "represents a reasonable award." *Id.* at 1314.

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation omitted); *Judicial Watch v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) ("A plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award."). Fees may be reduced where counsel spent time on unsuccessful claims, at least where unsuccessful claims were also unrelated to the successful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983); *Ecological Rights Found.*, 365 F. Supp. 3d at 1002. The Ninth Circuit first considers whether the successful and unsuccessful claims were based on the same facts and legal theories. *Greater L.A. Council on Deafness v. Cmty. TV of S. Cal.*, 813 F.2d 217, 222 (9th Cir.1987) (holding that when determining fee awards when a plaintiff is only partially successful, a court must either (1) award fees for work done only on the successful claims, if that

work is separable; or (2) where work is not separable, reduce the fee award to account for limited success, not by a mathematical ratio of winning claims to losing claims, but by considering the significance of the overall relief granted to all the claims and remedies pursued).  "Thus, 'where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained,' *Hensley [v. Eckerhart*, 461 U.S. 424, 440 (1983)], excluding 'nonproductive time or ... time expended on issues on which [the] plaintiff ultimately did not prevail,' *Weisberg [v. DOJ*, 745 F.2d 1476, 1499 (D.C. Cir. 1984)]." *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012).  "[C]laims are unrelated when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised. But, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Comty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (internal citations omitted) (affirming district court's conclusion that all initial claims had similar factual bases, were based on similar legal theories, and targeted single course of conduct by single defendant).

Where claims are related, the award may nonetheless be reduced. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986); *Rodriguez v. Barrita, Inc.,* 53 F. Supp. 3d 1268, 1288 (N.D. Cal. 2014).  Where claims are related, the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," and, if the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.  *Id.*  There is "no rule or mathematical formula for making these determinations and it is left to the district court's discretion, exercised in light of the considerations identified by the Supreme Court."  *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest*

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

*Serv.*, No. 3:10-CV-01397-SI, 2014 WL 3546858, at *6 (D. Or. July 15, 2014); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (approving 50% reduction in lodestar for limited success); *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1063 (9th Cir. 2010) (affirming 80% reduction of the fee request in light of plaintiff's limited success in civil rights action)

## II.     Plaintiff is Not Eligible For Fees.

Plaintiff cannot establish that this litigation played a "substantial causative effect" on the partial release of the first Carter Page FISA package – the FISA materials that were responsive here. First and foremost, the release of documents was caused by the President's decision to declassify the Nunes Memo, which acknowledged the existence of FISA applications related to Carter Page, and then additional information was publicly disclosed. These events were extremely unusual, even unprecedented, and in no way prompted by FOIA requests or by this lawsuit; rather, they were prompted by Congressional scrutiny and intra-Committee disagreement about the FISA applications. *See* 3rd Hardy Decl. ¶¶ 20-25. Those events were the only catalyst for the change in position and the ultimate release of documents in the several FOIA matters encompassing such documents (and others).   All four Carter Page FISA packages were processed and released on the same day, were mailed to multiple FOIA requestors and posted online the next day.  https://vault.fbi.gov/d1-release/d1-release/view.  This is precisely the hypothetical situation that was envisioned by the Ninth Circuit in *First Amendment Coalition* when it described an "obvious example" in which release of documents would not be caused by the litigation:  "previously classified information may have subsequently become unclassified for reasons having nothing to do with the litigation . . . ."  878 F.3d at 1128.  Here, previously properly classified information was declassified by the President in the public interest, requiring the agency to reevaluate its position and process the acknowledged documents.  Plaintiff's contention that the documents would not have been publicly released but for his FOIA suit,

1

2

based on nothing more than a newspaper article, is meritless.  *See* Pl.'s Mot. for Fees at 12, 16-17, Dkt. No. 82 ("Pl.'s Fees Mot.").

3

4

5

6

7

8

9

10

11

12

13

14

Second, Plaintiff cannot establish causation because, prior to the President's declassification decision, DOJ's decision not to confirm or deny the existence of the Carter Page documents was correct as a matter of law, which bars Plaintiff's eligibility for a fee award.  *See Brayton v. Office of the U.S. Trade Representative,* 641 F.3d 521, 528 (D.C. Cir. 2011).  The correctness of the original Glomar was established in the Government's first motion for summary judgment, *see* Dkt. No. 31, and it is implicitly confirmed by the district court's ultimate ruling that DOJ's slightly narrower Glomar was justified, *see* Dkt No. 78.   The Court agreed with the Government "that neither the contents of the declassified Nunes Memo nor the acknowledged existence of the national security investigation into Russian interference with the 2016 election creates any official acknowledgment or 'inescapable inference' that there was electronic surveillance beyond the acknowledged Carter Page FISA materials."  *Id*. at 26.  The

15

16

17

18

19

20

partial Glomar was thus rolled back from the first motion for summary judgment only to account for the President's decision to declassify the existence of the Carter Page applications and orders; accordingly, prior to those disclosures, the broader Glomar was necessarily appropriate as well.  Accordingly, the Government's original decision to withhold this information was correct as a matter of law. *See* Dkt. No. 78.   In *Brayton*, a case cited approvingly by the Ninth Circuit in *First Amendment Coalition*, 878 F.3d at 1128, the Government declassified and released a

21

22

23

24

25

26

27

document after briefing summary judgment; the D.C. Circuit found that the plaintiff was ineligible for fees where the original determination to withhold the document was correct as a matter of law and the declassification decision was unrelated to the litigation.  *Brayton,* 641 F.3d at 528 (reasoning that "courts should not dole out fee awards to plaintiffs who bring FOIA lawsuits that cannot survive a motion for summary judgment"); *see also Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993).  This case is thus nearly

28

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

identical to the fact pattern in *Brayton*; the declassification decision that resulted in release of documents was independent of the litigation and resulted in release of documents to which Plaintiff was not otherwise entitled.

Third, to the extent litigation had any effect on the release of documents, there were multiple other FOIA requests and FOIA lawsuits, including at least one case that pre-dated this one, and this litigation was not "necessary" to obtain the information. *See Church of Scientology*, 700 F.2d at 489. When the President tweeted about "wiretapping" in March 2017, multiple parties made FOIA requests then, and others made FOIA requests later. Several of these resulted in lawsuits. Three such lawsuits were listed in the parties' original case management conference report. *See* Dkt. No. 27 (citing *James Madison Project v. DOJ*, No. 17-597 (DDC); *American Oversight v. DOJ*, No 17-718 (DDC)(closed); *Gizmodo v. DOJ*, No. 17-3566 (SDNY)). Others were filed later, including *New York Times v. DOJ*, 18 Civ. 2054 (S.D.N.Y.); *Judicial Watch v. DOJ*, 18-CV-245 (D.D.C.). FBI received additional related FOIA requests as well. The James Madison Project request was fully briefed in September 2017 (before any briefing occurred in this case), and all of the acknowledged Carter Page FISA applications were responsive in that matter as well. In fact, the court in *James Madison Project* held a status conference and accepted the schedule proposed by the Government before this Court did. *James Madison Project v. DOJ*, No. 17-597 (DDC), (Minute Entry dated May 21, 2018, following Status Report at Dkt. Nos. 34, 35). In other words, but for Mr. Poulsen's lawsuit, the first Carter Page FISA application would undoubtedly have been released to the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

public at the same time, in the same manner.[4]  Mr. Poulsen's request and lawsuit did not cause its release.[5]

Plaintiff argues that he is nonetheless a "substantially prevailing" party because, after the Government changed positions for independent reasons, the Court entered a scheduling order "adopt[ing] the defendants' schedule," seeking to portray this case as a routine FOIA matter. Pl.'s Fees Mot. at 10-11 (citing Dkt. 46).  Plaintiff, however, did not "obtain relief" from that scheduling order within the meaning of the statute.  *See* 5 U.S.C. § 552(a)(4)(E).  When the Government determined that declassification would change its position, the Government moved to withdraw its motion for summary judgment to avoid unnecessary adjudication of stale information, and shortly thereafter proposed a processing schedule.  Dkt. Nos. 42, 45.  Plaintiff in fact opposed the withdrawal of the original motion and opposed the proposed processing schedule.  *See* Dkt. No. 43, 45.  Although the Court did not adopt either party's proposed briefing schedule, it did adopt Defendants' proposed processing schedule in light of Defendants' change in position.  Dkt. 46.  Plaintiff did not become entitled to documents as a result of the scheduling order, however; that order followed and was a consequence of Defendants' determination that it

---

[4] Plaintiff points to the proposed application released on November 9, 2019 as a document unique to this lawsuit.  It is not.  The redacted proposed application is substantively identical to the redacted final application.  Moreover, the first proposed application was released to other requestors on the same day.  All four proposed applications have subsequently been released to other requestors.

[5] Plaintiff correctly notes that, in *First Amendment Coal.,* the Ninth Circuit noted the existence of parallel litigation.  *First Amendment Coal.,* 878 F.3d 1119.  Defendants are not arguing the existence of parallel litigation is an absolute bar to recovery in every case; such parallel litigation by multiple litigants is, after all, commonplace.  Under the facts here, however, it would not be reasonable to find that this particular litigation caused release of documents when documents would undoubtedly have been released regardless and when this litigation was a follow-on to other litigation advanced first elsewhere.  Plaintiff here was aware of at least some of the other litigation, made much of the same arguments already made by others, and had the same odds of prevailing.  He cannot ride the coattails of other litigants to an attorney's fees award.  Fee awards in such situations create unintended incentives for duplicative FOIA litigation pursuing the same documents, simply copying arguments made by other litigants.

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

should process the documents after the independent public disclosures described above.  The same is true of Defendants' release of the redacted documents consistent with the schedule they proposed.

Thus, although there are cases finding eligibility based on scheduling orders that change the legal relationship between the parties, this is not such a case.  *Cf. Citizens for Responsibility & Ethics in Wash. v. DOJ*, 820 F. Supp. 2d 39, 44 (D.D.C. 2011).  The "legal relationship" between the parties was changed by independent events; the scheduling order merely acknowledged the Government's new position and managed the Court's docket.  *Cf. Pohl v. EPA*, Civ. No. 09-1480, 2012 WL 762083, at *14 (W.D. Pa. March 7, 2012) (finding order directing production of data by certain date "merely memorialized the representations of Government counsel during a case management conference"); *Waage v. IRS*, 656 F. Supp. 2d 1235, 1239 (S.D. Cal. 2009) (concluding that magistrate's order "merely documented the agreement reached between the parties" and did "not make the Plaintiff the prevailing party").  In any event, the Ninth Circuit's holding that the litigation must *cause* the release applies to all claims that a FOIA plaintiff is a prevailing party, *see Church of Scientology*, 700 F.2d at 489, and if Plaintiff did not cause the release, it is not transformed into a prevailing party by the Court's later, separate decision to manage its own docket.

Accordingly, the Court should determine that Plaintiff is not eligible for fees.

### III.     Plaintiff is Not Entitled To Fees.

Even if Plaintiff is eligible for fees, as a substantially prevailing party, he is not automatically entitled to fees.  Rather, the district court has broad discretion to weigh the relevant factors: (1) the benefit to the public; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records; and (4) the reasonableness of the government's withholding.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

With respect to the second and third factors regarding the nature of the requestor's interest in the records, Mr. Poulsen is a journalist who has a financial incentive to seek and report on Government records, but the Ninth Circuit recognizes "the unique treatment afforded journalists and scholars under this prong of the entitlement test," and these factors likely weigh in Plaintiff's favor under that logic.  *See Rosenfeld*, 904 F. Supp. 2d at 999.

But the other two factors weigh heavily in the Government's favor.  With respect to the public benefit factor, Poulsen argues that the release of the Carter Page FISA benefited the public. The Government does not dispute that the four sets of Carter Page FISA materials overall are of public interest; indeed, the President acknowledged as much when he declassified the Nunes Memo in the public interest.  But *this litigation* did not result in benefit to the public.  As an initial matter, only the first set of FISA materials and the proposed application were responsive in this case because of the timeframe on Plaintiff's request.  Notably, Plaintiff does not claim that he wrote about the release or the first application in particular, and does not claim he participated in any dissemination thereof.  Instead, Plaintiff merely says that he "sought the records for his reporting," and that the "released documents then received widespread media attention," Pl.'s Fees Mot., at 14, but of course the documents were released to all the requesters at the same time.  Plaintiff brought copycat litigation, and received fewer responsive documents than litigants who made more calculated requests.  Even if the parallel litigation did not undermine Plaintiff's causation argument, it surely undermines his claim to entitlement.  The public does not benefit from copycat FOIA litigation mimicking filings brought by other litigants and hoping to succeed by forum-shopping claims already brought elsewhere.  *Cf. Morley v. CIA*, 810 F.3d 841, 845 (D.C. Cir. 2016) ("[W]hether documents are already in the public domain is significant because it undermines any claim that the requester's use of FOIA had provided public access to the documents.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Additionally, the "reasonableness of the Government's position" weighs heavily in the Defendants' favor here.  The denial of a FOIA request must have a colorable basis in law and must not be merely for the purpose of frustrating the requester.  *Rosenfeld*, 904 F. Supp. 2d at 999.  As discussed above, the Government's position here was not only reasonable, it was correct as a matter of law, and changed only as a result of external events.  Indeed, Plaintiff concedes that "the government may be able to show that it had a reasonable basis in law for the withholding, as it has never previously released FISA warrant applications or orders . . . ."  Pl.'s Fees Mot. at 16.  Once the declassification required a change in the Government's position, the Government promptly withdrew its motion for summary judgment and proposed a schedule for processing.  Plaintiff essentially concedes that the Government's position was reasonable, but argues that he is entitled to fees in light of the other factors.  *See* Pl.'s Fees Mot. at 15-17.  This factor, however, should be understood in light of the overall purpose of FOIA's fee-shifting provision.  This provision "was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold," but instead "had a more limited purpose—to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977) (citing S.Rep. No. 93–854, at 17); *see also Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008).  Where, as here, the Government's position has been consistently and demonstrably reasonable and not remotely characterized by "administrative resistance," there is no reason for an award of fees.

Accordingly, even Plaintiff were eligible for a fee award, the Court should find that Plaintiff is not entitled to a fee award.

## IV. Any Fee Award Should Be Substantially Discounted For Work on Unsuccessful or Partially Successful Claims.

Even if Plaintiff were eligible for and entitled to fees, reasonable fees in this matter would be substantially discounted for lack of success. Plaintiff claims fees for all time spent on the litigation up through the date on which the proposed application was released, but does not attempt to segregate time spent unproductively or on unsuccessful claims. The following chart reflects an analysis of the time spent and fees claimed, based solely on the information in Plaintiff's billing records:[6]

| Assorted Litigation Tasks | | | |
|---|---|---|---|
| | HOURS | RATE | TOTAL |
| Kaupp 2017 | 11 | 675 | $7,425.00 |
| Kaupp 2018 | 10.4 | 715 | $7,436.00 |
| Flynn 2017 | 8.4 | 660 | $5,544.00 |
| Flynn 2018 | 5.7 | 675 | $3,847.50 |
| | | | TOTAL - 24,252.50 |

| 1st MSJ (all Defendants) | | | |
|---|---|---|---|
| | HOURS | RATE | TOTAL |
| Kaupp 2017 | 57.3 | 675 | $38,677.50 |
| Kaupp 2018 | 3.7 | 715 | $2,645.50 |
| Flynn 2017 | 10 | 660 | $6,600.00 |
| Flynn 2018 | 1.2 | 675 | $810.00 |
| | | | TOTAL - $48,733.00 |

| 2nd MSJ (versus NSA/ODNI) | | | |
|---|---|---|---|
| | HOURS | RATE | TOTAL |
| Kaupp 2018 | 83.5 | 715 | $59,702.50 |
| Flynn 2018 | 22.7 | 675 | $15,322.50 |
| Feinberg 2018 | 21 | 655 | $13,755.00 |
| | | | TOTAL - 88,780.00 |

| Fees on Fees | | | |
|---|---|---|---|
| | HOURS | RATE | TOTAL |
| Kaupp 2019 | 5.3 | 730 | $3,869.00 |
| Flynn 2019 | 25.9 | 700 | $18,130.00 |
| Feinberg 2019 | 3.4 | 655 | $2,227.00 |
| | | | TOTAL - $24,226.00 |

---

[6] This chart is based on an analysis of the billing records submitted by Plaintiff. Annotated versions of those records are attached to the Powell Declaration and are color-coded according to the categories listed in this chart.

Page **19** of 24

First, all time spent specifically on matters related to the claims against NSA and ODNI should be excluded from a reasonable fee award.  These claims against NSA and ODNI were based on FOIA requests specific to those agencies, in which those agencies' responses were ultimately vindicated.  While Plaintiff incorrectly advanced a similar legal theory as all Defendants, this motion was devoted entirely to that theory's application to NSA and ODNI, and was therefore legally and factually distinct.  Hours expended on unrelated, unsuccessful claims should not be included in the fee award. *Hensley*, 461 U.S. at 440; *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2011); *see also Corder v. Brown*, 25 F.3d 833, 841 (9th Cir. 1994) ("it is proper to award attorney's fees only for those claims successfully defended on the merits."); *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 619 (9th Cir. 1993) ("no fees should be awarded for work done on the losing claims."); *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 293 F. Supp. 3d 17, 30 (D.D.C. 2017) (deducting time spent on claims against one FOIA defendant where plaintiff partially prevailed against one agency but not the other). The *majority* of Plaintiff's claimed hours are for time spent on the second motion for summary judgment against NSA and ODNI, claims on which *Defendants* prevailed entirely.  *See* Powell Decl. & Ex. (highlighting time spent on 2nd MSJ in pink).[7]  Those FOIA requests were meritless, the claims about them were meritless, both the first and second motions for summary judgment against those agencies were meritless, and Plaintiff received no relief from court order or release of documents.  Rather, NSA and ODNI consistently refused to confirm or deny the possession of documents related to alleged surveillance of the Trump campaign.  They did not search for or produce documents and the Court granted the Government's second motion for summary judgment in its entirety.  *See, e.g., Judicial Watch, Inc.*, 878 F. Supp. 2d at 239-40 (excluding time spent on unsuccessful motions for summary judgment).  As set forth in the above chart, if

---

[7] The final printing of the pdfs of the annotated billing records appears more like a light pink-purple, but should be distinguishable from the dark purple applied to fees-related entries.

these hours related to the second motion for summary judgment are excluded, the maximum permissible lodestar figure, without further reductions, is $72,985.50.

Second, the Court should exclude all time spent after July 20, 2018.  Although one additional redacted document was released on November 9, 2018, it was substantively identical to the redacted document already released, and its release was not spurred by any interim efforts of Plaintiff's counsel.  The excluded hours include some time spent on the second motion for summary judgment, scheduling matters, and time spent reviewing the released records.  *See, e.g., Citizens for Responsibility & Ethics in Wash. v. DOJ*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011) (FOIA plaintiffs not entitled to fees for time spent reviewing produced documents because such review would occur even without litigation); *Hardy*, 293 F. Supp. 3d at 30–31 (same). Those hours are marked by stars (**) in the annotated billing records.  *See* Powell Decl. & Ex.  If those hours are also removed, it reduces Kaupp's 2018 hours by 5.6 and Flynn's 2018 hours by 3.4, and the maximum permissible lodestar is $66,686.

Additional billing entries are subject to exclusion for lack of success, vague records, and block billing.  For example, time spent opposing the Government's motion to withdraw its motion for summary judgment was neither successful nor useful in advancing Plaintiff's case. *See, e.g., Elec. Privacy Info. Ctr. v. DHS*, 999 F. Supp. 2d 61, 77 (D.D.C. 2013) (excluding hours spent unsuccessfully opposing an extension request).  Similarly, large numbers of hours are devoted to the motions in large blocks with vague descriptions, as though on a single day without taking breaks or eating, counsel devoted 9 hours to the motion for summary judgment as whole. Courts often eliminate or discount such block-billed hours.  *See, e.g.*, *League of Wilderness Defs./Blue Mountains Biodiversity Project.*, 2014 WL 3546858, at *7 (reducing vague or block billed entries by half*); see also Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 948 (9th Cir. 2007). These hours are identified in the attached records with an "XX".  Not counting hours already excluded above, the entries include .9 other 2018 hours for Flynn, and 36.6 other 2017 hours for

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kaupp.  If these hours are reduced by half, and the other deductions above are incorporated, the

maximum permissible lodestar is $54,029.75.

Finally, after the above deductions are taken, the remaining billed hours are for time

spent on filing the complaint, various administrative tasks and the first motion for summary

judgment.  The Court should substantially discount the fees devoted to these matters as well, in

light of Plaintiff's extremely limited success.  These hours are coded yellow and blue in the

annotated billing records.  Powell Decl. & Ex.  Plaintiff's original FOIA request and original

motion for summary judgment sought records from five components comprising essentially all

documents related to alleged surveillance of the Trump Campaign during a specific timeframe.

From that broad, all-encompassing request, Plaintiff essentially received two responsive

documents – the first FISA application and orders related to Carter Page – and another version of

that document.  The documents were only obtained from two of the DOJ components – NSD and

FBI.  Otherwise, the Court upheld Defendants' original refusal to confirm or deny the existence

of responsive records.  Plaintiff has achieved, at best, only partial success in this litigation, and

even with respect to the first set of briefing, there is an extraordinary mismatch between the

results obtained and the fees sought. This limited success is not consistent with the "excellent

results" that would justify this Court awarding Plaintiff "a fully compensatory fee." *Hensley,* 461

U.S. at 435.  The first motion for summary judgment was brought by all Defendants with respect

to all claims.  Defendants' position was entirely correct at the time, although Plaintiff ultimate

received two documents from one Defendant (DOJ).  Accordingly, if the Court were to

determine that an award of fees encompassing time spent up through this first motion for

summary judgment were permissible, it should nonetheless be reduced by at least 75% to

account for extremely limited success.  *See e.g.*, *Harris*, 24 F.3d at 19 (approving 50% reduction

in lodestar for limited success); *see also Mahach-Watkins*, 593 F.3d at 1063 (affirming 80%

reduction of the fee request in light of plaintiff's limited success in civil rights action); *Jankey v.*

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

*Beach Hut*, No. CV05-3856 SVW (JTLX), 2006 WL 4569361, at *6 (C.D. Cal. Dec. 19, 2006) ("60% reduction is necessary in light of the overall degree of success"); *Rodriguez,* 53 F. Supp. 3d at 1290 (imposing 20% reduction where Plaintiff won partial judgment, explaining "there is too great a mismatch between the results obtained and the relief sought to warrant a full award here, where a significant chunk of the litigation flowed from plaintiff's unsuccessful attempt to remedy certain other barriers"); *A.S. v. Dist. of Columbia,* 842 F. Supp. 2d 40, 47 (D.D.C. 2012) (imposing 50% reduction in lodestar because "plaintiffs attained only half of the relief they sought"). Here, Plaintiff received considerably less than half the relief sought, and against only one of the Defendants. If all of the above deductions are taken, and the remaining hours are reduced by 75%, a fee award for fees on the merits would be $13,507.44.

## V.    Fees-on-Fees Should Also Be Substantially Discounted.

Finally, fee awards for fees-on-fees should also be discounted for partial success. *See INS Commissioner v. Jean*, 496 U.S. 154, 163 n.10 (1990); *Webb v. Ada Cty.*, 195 F.3d 524, 527n.2 (9th Cir. 1999); *Harris v. McCarthy*, 790 F.2d 753, 759 (9th Cir. 1986) (holding that district court did not abuse its discretion by awarding fees-on-fees in the same ratio that it had awarded merits fees, 11.5%); *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir. 1995) (similar).[8] Accordingly, if the Court reduces the fees spent on the merits of this case for limited success, it should also reduce the fees-on-fees a proportionate amount. So, for example, if the Court awarded Plaintiff $13,507.44, as suggested above, that is 9.3% percent of the overall fees sought on the merits portion of the case $145,588.95 (all fees claimed on merits portion of case minus 10%). *See* Pls' Mot. at 18. The fees-on-fees should therefore be limited to 9.3% of the claim as

---

[8] Such reductions are particularly appropriate where much of the motion is "boilerplate" and "recycled from submissions to other courts." *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 950 (9th Cir. 2007) ("[T]he district court did not err in reducing the requested 13 hours for preparation of Welch's motion for attorney's fees by 9 hours.).

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531

well. If the Court made a merits fee award of $13,507.44, the total fees-on-fees award would be 9.3% of $24,226, or a total of $2,253.02.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for fees and costs should be denied, or the award substantially reduced.

Respectfully submitted,

Dated: May 20, 2019

HASHIM MOOPPAN
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney
U.S. Department of Justice, Civil Division
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Email: amy.powell@usdoj.gov

*Attorneys for Defendants*

*Defs' Opp'n to Motion for Fees*
*Poulsen v. DOD*, No. 17-cv-3531