UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN POULSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF DEFENSE, et al.,<br><br>    Defendants. | Case No. 17-cv-03531-WHO<br><br>**ORDER DENYING MOTION FOR ATTORNEY FEES**<br><br>Re: Dkt. No. 82 |

Plaintiff Kevin Poulsen seeks an award for attorney fees in this Freedom of Information Act case. However, he did not secure a change in the legal relationship between the parties nor prevail on the merits of his arguments. He is not entitled to attorney fees and his motion is DENIED.[1]

## BACKGROUND

The factual and procedural background of this case, as recited in the Court's March 22, 2019 Order granting the government's motion for summary judgment and denying Poulsen's motion, is as follows:

> Poulsen, contending the Agencies' [FOIA] responses were either untimely or legally deficient, filed this suit on June 19, 2017. In November 2017, the government moved for summary judgment to confirm the adequacy of each Agency's response. Dkt. No. 31. In support of that motion, each of the Agencies either affirmed or stated in the first instance that they would rely on *Glomar* to refuse to confirm or deny the existence of responsive records.
> 
> However, due to subsequent disclosures by governmental individuals regarding part of the subject matter covered by Poulsen's Requests, the government moved to withdraw the motion for

---

[1] Under Civil Local Rule 7-1(b), this matter is appropriate for resolution without oral argument and the June 26, 2019 hearing date is VACATED.

summary judgment so that each Agency could determine whether the disclosures "impacted" their response and whether documents responsive to the request could be acknowledged or produced. Dkt. No. 42. Poulsen objected, but I granted the government's request due to concerns of efficiency and orderly adjudication. However, NSA and ODNI represented that their FOIA responses were not impacted by the disclosures, and they intended to stick with their full *Glomar* responses. Therefore, I directed the parties to file cross-motions for summary judgment on the FOIA responses by NSA and ODNI, while the other Agencies were given time to finish their consideration of the impact of the public disclosures. Dkt. No. 46. The cross-motions with respect to NSA and ODNI were filed and have been pending since September 5, 2018.

On November 11, 2018, the remaining agencies – NSD, OLC, and the FBI – filed their motion for summary judgment. Poulsen responded on December 7, 2018. In that motion, the government admits that there were two "public acknowledgements" relevant to Poulsen's FOIA Requests.

The first acknowledgement was in the March 20, 2017 Congressional testimony of then-FBI Director James B. Comey, where Comey confirmed that the FBI had (in July 2016) opened an investigation of "the Russian government's efforts to interfere in the 2016 Presidential election[.]" Third Declaration of David M. Hardy (3rd Hardy Decl., Dkt. No. 66-1) ¶ 12 & n.2. As part of his testimony, and the "public acknowledgment" that the FBI admits narrowly waived part of its initial *Glomar* defense, Comey admitted that the FBI had no records of alleged wiretapping of then-candidate Trump in Trump Tower by the Obama Administration prior to the 2016 presidential election (as referenced in President Trump's Twitter post on March 4, 2017). *Id*. ¶ 8.

The second acknowledgement resulted from the President's declassification of a memorandum prepared by staff of the House Permanent Select Committee on Intelligence ("HPSCI," the "Nunes Memo") and the subsequent release of a different memorandum prepared by certain HPSCI members (the "Schiff Memo"). In light of the declassification and release, the government acknowledged the existence of Foreign Intelligence Surveillance Act ("FISA") applications and orders to conduct surveillance of Carter Page. 3rd Hardy Decl. ¶¶ 17-23.

Because of those official acknowledgments, the DOJ does not maintain a *Glomar* response for the existence of the Carter Page FISA applications or orders. The FBI and NSD admit that they maintain some records related to the acknowledged FISA applications and orders; OLC confirmed that it has located no records related to the acknowledged FISA applications and orders. 3rd Hardy Decl. ¶ 29; Declaration of Patrick N. Findlay (Dkt. No. 66-2) ¶ 20; Second Declaration of Paul P. Colborn (2nd Colborn Decl., Dkt. No. 66-3) ¶ 15.

As a result, the FBI and NSD processed the acknowledged documents under FOIA for a limited production to Poulsen and other FOIA requestors.2 Because the DOJ interpreted Poulsen's FOIA

> Requests as covering only the initial Carter Page FISA application (dated October 2016), but not the three renewals, only documents related to that first application were processed for release to Poulsen (although the remainder of the documents/renewals were processed for production to other FOIA requestors). 3rd Hardy Decl. ¶ 26. With respect to the October 2016 application, the DOJ produced 83 pages and withheld in full 186 pages relevant to all four applications. *Id*. ¶¶ 27-28.3 The information redacted and withheld in full has been withheld under Exemptions 1 (classified and exempt intelligence information); Exemption 3 (information revealing intelligence sources and methods protected by the National Security Act); Exemptions 7(A), 7(D), and 7(E) (protected law enforcement information), and Exemptions 6 and 7(C) (private information). 3rd Hardy Decl. ¶ 39.
>
> As the information sought by Poulsen was broader than just the disclosed-FISA applications and orders, and Poulsen sought other information related to the Carter Page surveillance, the FBI and NSD withheld that additional information under Exemption 7(A). They assert a partial *Glomar* refusing to "confirm or deny the existence of specific subcategories" of the request as they "relate to Carter Page" because that would disclose the existence or nonexistence of specific types of surveillance results withheld under Exemptions 1, 3, 7(A) and 7(E). 3rd Hardy Decl. ¶¶ 160-163.
>
> Finally, the FBI, NSD, and OLC assert Glomar in regards to confirming or denying the existence of non-Carter Page documents (for any other FISA applications, orders, or other electronic surveillance). They contend that confirmation or denial could cause harms protected by Exemption 1, Exemption 3, Exemptions 7(A) and 7(E), and for the OLC, Exemption 5. *Id.*; *see also* 2nd Colburn Decl., ¶¶ 16, 18, 20.

March 22, 2019 Order at 4-7.

I granted the government's motions for summary judgment in full and denied Poulsen's motion. Dkt. No. 78 (March 22, 2019 Order). Judgment was entered on March 22, 2019 and this motion for attorney fees followed. Poulsen argues that he is entitled to fees – despite losing every legal and factual argument he raised – because he "substantially prevailed" when I adopted the government's proposed processing schedule for the Page FISA materials (that were being released as a result of the post-litigation declassification order) and because he actually secured those Page FISA materials, as did a number of other FOIA requestors.

As explained below, unprecedented official disclosures were the catalyst for the production of the Page FISA materials. There is *no evidence* that the existence of this suit led to the public disclosure of the Page FISA materials. Because no court order changed the legal relationship between the parties or provided Poulsen any relief on the merits of his claims, Poulsen is not

3

eligible for an award of attorney fees.

**LEGAL STANDARD**

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "[A] complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. § 552(a)(4)(E)(ii). To be eligible under the latter prong, where an agency voluntarily changes its position, the plaintiff's litigation must have been the "catalyst" for the change, with the following factors relevant to that determination: "(1) 'when the documents were released,' (2) 'what actually triggered the documents' release,' and (3) 'whether [the plaintiff] was entitled to the documents at an earlier time.' " *First Amendment Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1129 (9th Cir. 2017) (quoting *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 492 (9th Cir. 1983)).

"Once a court deems a party eligible to recover fees and costs, it then exercises its 'discretion to determine whether the plaintiff is entitled to fees.'" *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 994 (N.D. Cal. 2012) (quoting *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009)). Whether to award fees to a party who is eligible for them "is left to the sound discretion of the trial court." *Church of Scientology*, 700 F.2d at 492. Relevant facts to be considered include, but are not limited to, "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Id*.

**DISCUSSION**

**I. FEE ELIGIBILITY DUE TO A JUDICIAL ORDER**

Poulsen argues that he is entitled to fees as a prevailing plaintiff because, following a Case Management Conference, I entered a minute order adopting defendants' proposed schedule for the review and production of the Page FISA materials. Dkt. No. 46 (3/27/2018 Civil Minutes).

In making this argument, Poulsen relies on a line of cases concluding that where a court order requires an agency to process or produce records by a date certain to a FOIA plaintiff, "even when voluntarily agreed to by the government," the orders changed the legal status between the parties and those orders "are sufficient to make plaintiffs eligible for attorneys' fees under FOIA." *Jud. Watch, Inc. v. F.B.I.*, 522 F.3d 364, 370 (D.C. Cir. 2008); *see also id*. at 366 (where agency failed to respond to FOIA requests but agreed post-FOIA lawsuit filing and post-amendment to produce requested records after redaction, and court entered stipulated agreements in the docket memorializing those agreements, attorney fees were warranted); *Davy v. C.I.A.*, 456 F.3d 162, 164 (D.C. Cir. 2006) (where agency issued a *Glomar* response, plaintiff filed suit, and the parties entered a Joint Stipulation for the production of responsive documents, the Joint Stipulation requiring production of specific documents by a date certain entitled plaintiff to fees despite government's "voluntary change in conduct"); *Citizens for Resp. and Ethics in Washington v. U.S. Dept. of J.*, 820 F. Supp. 2d 39, 41 (D.D.C. 2011) (where agency failed to respond to FOIA requests, plaintiff filed suit, and the court issued an order requiring agency to "complete its processing and produce certain responsive documents by a specified date," the order changed the legal relationship between the parties and provided plaintiff some relief on the merits, plaintiff was entitled to fees); *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 342 (D.D.C. 2014) (plaintiff filed suit "[a]fter receiving no substantive response from the FBI regarding its FOIA requests," and following initiation of the lawsuit the agency produced documents and the government stipulated to court-adopted dates to produce remaining information, plaintiff was entitled to fees); *Jud. Watch, Inc. v. U.S. Dept. of J.*, 774 F. Supp. 2d 225, 227 (D.D.C. 2011) (where plaintiff filed suit after "having received no response from DOJ," and shortly after filing, the parties stipulated to an end date for production of records and a *Vaughn* index, plaintiff was entitled to fees); *see also Dorsen v. United States SEC*, 15 F. Supp. 3d 112, 120 (D.D.C. 2014) (plaintiff prevailed where FOIA suit prompted additional or speedier release of documents); *but see Pohl v. U.S. E.P.A.*, CIV.A. 09-1480, 2012 WL 762083, at \*14 (W.D. Pa. Mar. 7, 2012) (order "merely memorialized the representations of Government counsel during a case management conference concerning the period needed to review the research data . . . before

5

production . . . did not change the legal relationship of the parties").

The theory underlying the decisions finding eligibility for fees is that, prior to the scheduling orders, the government was under no court ordered-deadline to process information or produce anything. But in each of those cases, either by force of the court or by voluntary agreement of the government, there was a change in the government's position from the administrative processing/appeal period (*e.g.*, the agency refused to produce documents, refused to redact documents, or refused or otherwise failed to comply with the response deadlines mandated under FOIA) to the position of the government in the litigation period (*e.g.*, where the government voluntarily or was ordered by the court to process and/or produce documents by a date certain). The scheduling orders, therefore, *changed* the parties' legal relationship that existed prior to the lawsuit and put the government under sometimes voluntary but sanction-enforceable requirements.

Here, on the other hand, there was no change in the government's legal position with respect to Poulsen from before or during the litigation due to the existence of this lawsuit. From the inception of the case through the first round of summary judgment briefing, the government broadly asserted *Glomar*. It would have continued to assert *Glomar* but for two limited official acknowledgements, related to the March 20, 2017 Congressional testimony of then-FBI Director James B. Comey and to the President's declassification of a memorandum prepared by staff of the House Permanent Select Committee on Intelligence ("HPSCI," the "Nunes Memo") and the subsequent release of a different memorandum prepared by certain HPSCI members (the "Schiff Memo"). These acknowledgements made the government reassess its pre-litigation stance (with respect to Comey's testimony) and its stance on the first round of summary judgment briefing (with respect to the declassification of the Page FISA materials). These disclosures were acknowledged by both the government and Poulsen as "unprecedented" and were wholly unrelated to the existence of this or any of the related FOIA litigation.

In light of these circumstances occurring outside of the litigation but which required the government to change its position on official acknowledgements, my scheduling order adopted the government's suggestion of when it would be able to process and produce the Page FISA materials. Had the government *opposed* processing and production of the Page FISA materials

1  despite the official acknowledgments and been forced to do so because of this case, then Poulsen
2  could obtain attorney fees. The facts here are unique and materially different from the cases on
3  which Poulsen relies. They are all distinguished by the parties' changed legal relationship as a
4  result of the litigation. That is not what happened here. My March 27, 2018 minute order does
5  not entitle Poulsen to fees.

## II.     FEE ELIGIBILITY DUE TO VOLUNTARY CHANGE IN GOVERNMENT'S POSITION

Poulsen also argues that he is eligible for fees under the catalyst theory because the existence of this (and arguably the other parallel FOIA lawsuits) caused the government's change in position and the release of the Page FISA materials. Under this theory, "where an agency voluntarily changes its position, the plaintiff's complaint must have been the 'catalyst' for the change, with the following factors relevant to that determination: '(1) when the documents were released, (2) what actually triggered the documents' release, and (3) whether [the plaintiff] was entitled to the documents at an earlier time.'" *Kopp v. U.S. Secret Serv.*, 18-CV-04913-JCS, 2019 WL 2327933, at *3 (N.D. Cal. May 31, 2019) (quoting *First Amendment Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1129 (9th Cir. 2017) (further internal quotations omitted); *see also First Amend. Coalition*, 878 F.3d at 1130 (concluding that plaintiff's litigation "triggered the release of additional or key documents").[2]

Here, as noted above, the government's change in position – from its full *Glomar* to its partial *Glomar* (for the FBI, NSD and OLC) and release of the Page FISA materials – was not caused by this lawsuit (or the parallel lawsuits) but by the unprecedented declassification decision of the President. In these circumstances, Poulsen's lawsuit was not a catalyst for the government's changed position. The lead opinion in *First Amendment Coalition* underscores the need for the catalyst causation requirement because "[t]here may be a host of reasons why the Government has voluntarily released information after the filing of a FOIA lawsuit. One obvious example is that

---

[2] There is some debate whether "causation" is required and, if so, how much causal connection stemming from the split decision of the Ninth Circuit panel in the *First Amendment Coalition* case. *See* Opposition at 9 n.3; Reply at 8-9. However, as the *Kopp* decision recognized, the lawsuit must have been the "catalyst" and therefore caused the government's change of position.

7

previously classified information may have subsequently become unclassified for reasons having nothing to do with the litigation." *First Amend. Coalition*, 878 F.3d at 1128.

Similarly, in *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011), where motions for summary judgment had been filed but not yet ruled on, the agency voluntarily declassified a document covered by the FOIA suit, apparently because European partners agreed it could be disclosed. *Id.* at 524. The district court's decision to deny fees was affirmed by the D.C. Circuit because the government's initial position – that the classified document was exempt from disclosure – was correct on the merits and, therefore, the plaintiff was not a "prevailing party" entitled to fees. *Id.* at 528 ("the fact that their initial nondisclosure decision rested on a solid legal basis creates a safe harbor against the assessment of attorney fees"). Here the government's *Glomar* assertions – modified in part after the acknowledgments and declassification determinations – were sustained in full. But for the acknowledgements and declassification determinations, the fuller *Glomar* assertions would have been appropriate. *See* March 22, 2019 Order at 26-28, 33 (upholding *Glomar* responses, as modified by official acknowledgments).

Poulsen attempts to distinguish *Brayton* and *First Amendment Coalition* by arguing that in neither of those cases was there a scheduling order imposed on the government requiring it to process and produce the declassified document by a date certain. Reply at 9. But the government's agreement to process the FISA materials was not caused by the existence of this lawsuit. Nor did this lawsuit or any order of mine rectify a failure to adequately respond to or process Poulsen's FOIA requests and, thereby, change the legal positions of the parties. My minute order simply acknowledged the government's changed position in light of unprecedented post-filing disclosures and adopted the government's reasonable timeframe for production in light of the changed circumstances. Neither the lawsuit nor my Order caused the government to agree to process and produce the FISA related materials; the internal declassification decisions following the limited acknowledgements did. There is no evidence that Poulsen's suit was the catalyst for or

8

otherwise caused that processing and release, and he is not entitled to attorney fees.[3]

## CONCLUSION

For the foregoing reasons, Poulsen's motion for attorney fees is DENIED.

**IT IS SO ORDERED.**

Dated: June 21, 2019



William H. Orrick
United States District Judge

---

[3] Because I conclude that Poulsen is not "eligible" for fees, I need not reach whether he is "entitled" to fees and if so the reasonable amount of those fees. However, I note that the fourth factor used to assess entitlement – the reasonableness of the government's position – weighs in the government's favor on the unique record of this case. The government's legal positions were affirmed throughout and would have been fully affirmed but for the intervening official acknowledgments and the government's request to withdraw its motion for summary judgment to allow for processing and production of the Page FISA materials and the more limited *Glomar* responses in light of the acknowledgements.